NAPOLI SHKOLNIK PLLC
Jennifer Liakos (SBN 207487)
525 South Douglas Street, Suite 260
El Segundo, CA 90245
Telephone: (310) 331-8224
Fax: (646) 843-7603
Email: jliakos@napolilaw.com

Paul B. Maslo (*pro hac* forthcoming)
Andrew Dressel (*pro hac* forthcoming)
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: pmaslo@napolilaw.com
adressel@napolilaw.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN DULBERG, individually, and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., and RASIER, LLC,<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Martin Dulberg ("Dulberg"), by and through his counsel, alleges the following on behalf of himself and those similarly situated.

## INTRODUCTION

1. Uber Technologies, Inc. and Raiser, LLC (collectively, "Uber") provide a mobile phone application that connects passengers seeking transportation services to Uber's drivers providing transportation services. Dulberg drives for Uber, using both its Uber X and Uber Select platforms.

2. The December 11, 2015 Technology Services Agreement (the "Agreement"), attached as **Exhibit 1**, and accompanying Service Fee Addendum, attached as **Exhibit 2**, require Uber to deduct a percentage (20% on Dulberg's Uber X rides and 28% on his Uber Select rides) of the Fare determined by the Fare Calculation in the Agreement as a Service Fee for Dulberg's use of Uber's electronic application and related services. The Fare Calculation includes a base amount plus distance and time amounts.

3. During times of increased demand, a passenger sometimes has a separate charge called "Surge," which is when Uber applies a multiplier to the Fare determined by the Fare Calculation. "Surge" is in addition to the Fare determined by the Fare Calculation and appears as a completely separate entry on billing/payment statements from the Fare.

4. Uber also sometimes forecasts increased demand and applies a "Boost" multiplier ahead of time to whatever the Fare determined by the Fare Calculation will be. Unlike "Surge," which the passenger pays, Uber pays "Boost." "Boost" is in addition to the Fare determined by the Fare Calculation and appears as a completely separate entry on billing/payment statements from the Fare.

5. When there is "Surge" and/or "Boost," instead of deducting its Service Fee from only the Fare determined by the Fare Calculation, as the Agreement requires, Uber also takes its Service Fee out of "Surge" and/or "Boost." This practice breaches the Agreement, which, again, requires Uber to deduct its Service Fee from only the Fare determined by the Fare Calculation.

**PARTIES**

6. Dulberg is a resident of Raleigh, North Carolina.

7. Uber Technologies, Inc. is a Delaware corporation headquartered at 1455 Market Street, San Francisco, CA 94103.

8. Defendant Rasier, LLC, a subsidiary of Uber and the equivalent of Uber for purposes of this action, is a Delaware limited liability company headquartered at 1455 Market Street, San Francisco, CA 94103.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the parties are diverse. Plaintiff is a citizen of North Carolina and Defendants are citizens of Delaware.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of the Class (as defined below) exceed the sum or value of $5,000,000.00, there is minimal diversity of citizenship between Plaintiff and Defendants, and the class consists of more than 100 members.

11. This Court has personal jurisdiction over Uber because Section 15.1 of the Agreement states that Uber submits "to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California."

12. Venue is also proper in this District under Section 15.1 of the Agreement.

13. Plaintiff alleges on information and belief that each Defendant acted in all manners relevant to this action as the agent of the other Defendant and that they carried out joint business plans and operations. The acts and omissions of each Defendant are legally attributable to the other Defendant.

## FACTUAL ALLEGATIONS

14. Dulberg signed up as a driver for Uber X in May 2014 and as a driver for Uber Select in February 2015.

15. Section 4.1 of the Agreement addresses the "Fare Calculation" and payment of drivers:

> **Fare Calculation and Your Payment**. You are entitled to charge a fare for each instance of completed Transportation Services provided to a User that are obtained via the Uber Services (*"Fare"*), where such Fare is calculated based upon a base fare amount plus distance (as determined by Company using location-based services enabled through the Device) and/or time

> amounts, as detailed at www.uber.com/cities for the applicable Territory ("*Fare Calculation*"). You acknowledge and agree that the Fare provided under the Fare Calculation is the only payment you will receive in connection with the provision of Transportation Services, and that neither the Fare nor the Fare Calculation includes any gratuity. You are also entitled to charge User for any Tolls, taxes or fees incurred during the provision of Transportation Services, if applicable. You: (i) appoint Company as your limited payment collection agent solely for the purpose of accepting the Fare, applicable Tolls and, depending on the region and/or if requested by you, applicable taxes and fees from the User on your behalf via the payment processing functionality facilitated by the Uber Services; and (ii) agree that payment made by User to Company (or to an Affiliate of Company acting as an agent of Company) shall be considered the same as payment made directly by User to you. In addition, the parties acknowledge and agree that as between you and Company, the Fare is a recommended amount, and the primary purpose of the pre-arranged Fare is to act as the default amount in the event you do not negotiate a different amount. You shall always have the right to: (i) charge a fare that is less than the pre-arranged Fare; or (ii) negotiate, at your request, a Fare that is lower than the prearranged Fare (each of (i) and (ii) herein, a "*Negotiated Fare*"). Company shall consider all such requests from you in good faith. Company agrees to remit, or cause to be remitted, to you on at least a weekly basis: (a) the Fare less the applicable Service Fee; (b) the Tolls; and (c) depending on the region, certain taxes and ancillary fees. If you have separately agreed that other amounts may be deducted from the Fare prior to remittance to you (*e.g.*, vehicle financing payments, lease payments, mobile device usage charges, etc.), the order of any such deductions from the Fare shall be determined exclusively by Company (as between you and Company).

16. Section 4.4 of the Agreement governs the "Service Fee" that Uber charges drivers: "In consideration of Company's provision of the Driver App and the Uber Services for your use and benefit hereunder, **you agree to pay Company a service fee on a per Transportation Services transaction basis <u>calculated as a percentage of the Fare determined by the Fare Calculation</u>**[.]" (emphasis added).

17. Nothing in the Agreement allows Uber to collect its Service Fee based on a multiple of the Fare determined by the Fare Calculation.

18. Nothing in the Agreement allows Uber to collect its Service Fee based on "Surge."

19. Nothing in the Agreement allows Uber to collect its Service Fee based on "Boost."

20. Section 15.1 of the Agreement provides that its "interpretation . . . shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction."

21. Dulberg's Service Fee Addendum states that the Service Fee for Uber X drivers who started prior to November 23, 2015, is 20% of the Fare determined by the Fare Calculation. The Service Fee for Uber Select drivers is 28% of the Fare determined by the Fare Calculation.

22. Section 13.1 defines the "Relationship of the Parties": "**Except as otherwise expressly provided herein with respect to Company acting as the limited payment collection agent solely for the purpose of collecting payment from Users on your behalf, the relationship between the parties under this Agreement is solely that of independent contracting parties.**" (emphasis in original).

23. The Agreement and Service Fee Addendum also apply to Uber XL.

24. On information and belief, earlier driver agreements and driver agreements for other Uber services like Uber Black and Uber SUV contain substantially similar provisions.

25. During times of increased demand, a passenger sometimes has a separate charge called "Surge," which is when Uber applies a multiplier to the Fare determined by the Fare Calculation in the Agreement. "Surge" is in addition to the Fare determined by the Fare Calculation and appears as a completely separate entry on billing/payment statements from the Fare.

26. Uber also sometimes forecasts increased demand and applies a "Boost" multiplier ahead of time to whatever the Fare determined by the Fare Calculation in the Agreement will be. Unlike "Surge," which the passenger pays, Uber pays "Boost." "Boost" is in addition to the Fare determined by the Fare Calculation and appears as completely separate entry on billing/payment statements from the Fare.

27. When there is "Surge" and/or "Boost," instead of deducting its Service Fee from only the Fare determined by the Fare Calculation, as the Agreement requires, Uber also takes its Service Fee out of "Surge" and/or "Boost." This practice breaches the Agreement, which, again, requires Uber to deduct its Service Fee from only the Fare determined by the Fare Calculation.

28. For example, the following receipt shows the breakdown for a ride that Dulberg gave on February 14, 2016:

TOTAL PAYOUT

$23.60

Sun, February 14, 2:39 AM

**Trip Detail** Sun, February 14, 2:39 AM

**Trip Earnings**

| | |
|---|---|
| Fare | $11.80 |
| • Base Fare | $1.00 |
| • 12.38 mi × $0.70/mi | $8.66 |
| • 15.32 min × $0.14/min | $2.14 |
| Surge<br>*Surge applies to Base, Distance and Time. | $17.70 |
| Uber Fee | -$5.90 |
| **Total** | **$23.60** |

15min 19sec
DURATION

12.38 mi
DISTANCE

**2:39:48 AM**
612 N Blount St

**3:02:04 AM**
301 N Harrison Ave, Cary, NC 27513, United States

| | |
|---|---|
| **Requested Vehicle** | uberX |
| **Trip ID** | 0b9c4366-2e8d-4460-8a3b-224496de61f |
| **License Plate** | CDW6292 |

29. The Fare determined by the Fare Calculation is $11.80. "Surge" is $17.70. According to the Agreement, Uber's Service Fee should have been 20% of the Fare determined by the Fare Calculation or $11.80 x 0.2 = $2.36. Instead, Uber also took 20% of the Surge or $17.70 x 0.2 = $3.54, for a total Service Fee of $2.36 + $3.54 = $5.90. But nothing in the Agreement allows Uber to take its Service Fee out of anything except the Fare determined by the Fare Calculation.

30. Similar breaches can be seen in the following excerpt from Dulberg's "Payment Statement" for the period ending on May 9, 2016:

| Date/Time | Trip ID | Type | Fare | Uber Fee | Fare Adjustment | Misc. | Surge | Cancellation | Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | 523.24 | -160.17 | 16.19 | 90.93 | 138.10 | 10.00 | 527.36 |
| May 2, 2016 | | | | | | | | | 59.12 |
| 04:53 PM | 8af20552-8464-4ac0-9a9e-ddcc5208bd3c | uberX | 3.63 | -2.03 | | | 6.53 | | 8.13 |
| 05:00 PM | 6ffbc49d-666b-40ef-9196-20ee2972278b | uberX | 8.21 | -5.91 | | | 21.35 | | 23.65 |
| 05:27 PM | 69e27742-696e-4521-9490-ec4c162f1dc2 | UberSELECT | 15.89 | -4.45 | | | | | 11.44 |
| 11:08 PM | a39f93ed-aa23-473c-879a-424fd7e3f014 | UberSELECT | 9.00 | -2.52 | | | | | 6.48 |
| 11:22 PM | 2d63bbe7-6f2c-4540-ad69-61be54ad2090 | uberX | 5.61 | -2.36 | | | 6.17 | | 9.42 |

31. As an example, for the ride at 4:53 p.m., Uber should have take a Service Fee of 20% of the Fare determined by the Fare Calculation or $3.63 x 0.2 = $0.73. But Uber also took 20% of "Surge" as a Service Fee: $6.53 x 0.2 = $1.30. Nothing in the Agreement allows Uber to take its Service Fee out of anything except the Fare determined by the Fare Calculation. Accordingly, Uber breached the Agreement because instead of taking $0.73, Uber took $0.73 + $1.30 = $2.03.

32. Uber does the same thing with "Boost." For example, as shown below, Uber takes its 20% Service Fee (*i.e.*, $2.54) from the Fare determined by the Fare Calculation (*i.e.*, $6.36) *and* "Boost" (*i.e.*, $6.36):

1/25/2018 Trip Detail

≡
Partner Earnings

‹ Back to Weekly Earnings

TOTAL PAYOUT

$10.18

Sat, October 29, 3:31 PM

Trip Detail Sat, October 29, 3:31 PM

**Trip Earnings**

| | |
|---|---|
| Fare | $6.36 ⌄ |
| Boost<br>*Boost applies to Base, Distance and Time | $6.36 |
| Uber Fee | -$2.54 |
| **Total** | **$10.18** |

| 12min 25sec | 5.17 mi |
|---|---|
| DURATION | DISTANCE |

**3:31:59 PM**
1235 Hurricane Alley Way, Raleigh, NC 27607, USA

**3:48:29 PM**
2109 Myron Dr, Raleigh, NC 27607, USA

| | |
|---|---|
| **Requested Vehicle** | uberX |
| **Trip ID** | 798e376a-d7c6-4ee6-9946-6d265cee40db |
| **License Plate** | CDW6292 |

## CLASS ACTION ALLEGATIONS

33. Dulberg commences this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, including Rule 23(b)(3), on behalf of the following class:

> All natural persons nationwide who, during the four years prior to the date of this complaint, (1) drove for Uber X, Uber XL, Uber Select, Uber Black, and/or Uber SUV; (2) opted out of arbitration; (3) transported a passenger with "Surge" and/or "Boost" before May 22, 2017, when Uber issued its updated fee addendum; and (4) had Uber deduct a portion of the "Surge" or "Boost" as its Service Fee.

34. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment. Excluded from the Class are Uber and its affiliates, parents, subsidiaries, employees, officers, agents, and directors; government entities or agencies, their affiliates, employees, officers, agents, and directors in their governmental capacities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and Class counsel.

35. **Numerosity**: The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of such persons is unknown because the data required to calculate that number is presently within the sole possession, custody, and control of Defendants. Upon information and belief, there are more than 17,000 Uber drivers who are members of the Class.

36. **Commonality**: There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members, including, but not limited to, the following:

a. Whether, under California law, which applies to all Class members pursuant to the Agreement's choice-of-law clause, Uber breached the Agreement and Addendum, the terms of which apply to all drivers;

b. The proper measure of damages recoverable by Class members; and

c. Additional common questions of law and fact as developed during the discovery phase of this litigation.

37. **Typicality**: Dulberg's claims are typical of the claims of the Class, as such claims could be alleged by any member of the Class, and the relief Dulberg seeks is typical of the relief that Class members seek. All of the Class members were subject to the same alleged practices of Uber. Uber's corporate-wide policies and practices affected all Class members similarly, and Uber benefited from the same type of unfair and/or wrongful acts as to each Class member. Dulberg and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Uber.

38. **Adequacy of Representation**: Dulberg is able to fairly and adequately protect the interests of the Class and has no interests adverse to the Class. At all relevant times, Dulberg and Class members are and have been similarly situated under the Agreement. The Class representative and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint, so as to be able to assist in its prosecution. In addition, the representative's attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class. Furthermore, the resources available to Class counsel ensure that the litigation will not be hampered by a lack of financial capacity. Dulberg's attorneys have sufficient financial resources and are willing to absorb the costs of the litigation.

39. **Superiority**: Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class. The losses, injuries, and damages are small, such that without class treatment, individual action by each Class member would be cost-prohibitive.

40. **Ascertainability**. The Class members are readily ascertainable. For notice and other purposes related to this action, the number and identity of the Class members are determinable from Uber's business records.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

41. Dulberg incorporates by reference all the foregoing paragraphs as though fully set forth herein.

42. The Agreement and Service Fee Addendum apply to UberX, UberXL, and Uber Select. On information and belief, driver agreements for other Uber services, such as Uber Black and Uber SUV, contain substantially similar provisions.

43. On information and belief, prior versions of the Agreement and Service Fee Addendum contain similar provisions.

44. Dulberg and Uber executed the Agreement and Service Fee Addendum. Through these agreements, Uber procured the driving services of Dulberg and the Class. These driving services constitute adequate consideration and Dulberg and the Class have performed the driving services outlined in these agreements.

45. Section 4.1 of the Agreement addresses the "Fare Calculation" and payment of drivers:

> **Fare Calculation and Your Payment**. You are entitled to charge a fare for each instance of completed Transportation Services provided to a User that are obtained via the Uber Services (*"Fare"*), where such Fare is calculated based upon a base fare amount plus distance (as determined by Company using location-based services enabled through the Device) and/or time amounts, as detailed at www.uber.com/cities for the applicable Territory ("*Fare Calculation*"). You acknowledge and agree that the Fare provided under the Fare Calculation is the only payment you will receive in connection with the provision of Transportation Services, and that neither the Fare nor the Fare Calculation includes any gratuity. You are also entitled to charge User for any Tolls, taxes or fees incurred during the provision of Transportation Services, if applicable. You: (i) appoint Company as your limited payment collection agent solely for the purpose of accepting the Fare, applicable Tolls and, depending on the region and/or if requested by you, applicable taxes and fees from the User on your behalf via the payment processing functionality facilitated by the Uber Services; and (ii) agree that payment made by User to Company (or to an Affiliate of Company acting as an agent of Company) shall be considered the same as payment made directly by User to you. In addition, the parties acknowledge and agree

> that as between you and Company, the Fare is a recommended amount, and the primary purpose of the pre-arranged Fare is to act as the default amount in the event you do not negotiate a different amount. You shall always have the right to: (i) charge a fare that is less than the pre-arranged Fare; or (ii) negotiate, at your request, a Fare that is lower than the prearranged Fare (each of (i) and (ii) herein, a "*Negotiated Fare*"). Company shall consider all such requests from you in good faith. Company agrees to remit, or cause to be remitted, to you on at least a weekly basis: (a) the Fare less the applicable Service Fee; (b) the Tolls; and (c) depending on the region, certain taxes and ancillary fees. If you have separately agreed that other amounts may be deducted from the Fare prior to remittance to you (*e.g.*, vehicle financing payments, lease payments, mobile device usage charges, etc.), the order of any such deductions from the Fare shall be determined exclusively by Company (as between you and Company).

46. Section 4.4 of the Agreement governs the "Service Fee" that Uber charges drivers: "In consideration of Company's provision of the Driver App and the Uber Services for your use and benefit hereunder, **you agree to pay Company a service fee on a per Transportation Services transaction basis <u>calculated as a percentage of the Fare determined by the Fare Calculation</u>**[.]" (emphasis added).

47. Nothing in the Agreement allows Uber to collect its Service Fee based on anything except the Fare determined by the Fare Calculation.

48. Nothing in the Agreement allows Uber to collect its Service Fee based on "Surge."

49. Nothing in the Agreement allows Uber to collect its Service Fee based on "Boost."

50. Dulberg's Service Fee Addendum states that the Service Fee for Uber X drivers who started prior to November 23, 2015, is 20% of the Fare determined by the Fare Calculation. The Service Fee for Uber Select drivers is 28% of the Fare determined by the Fare Calculation.

51. During times of increased demand, a passenger sometimes has a separate charge called "Surge," which is when Uber applies a multiplier to the Fare determined by the Fare Calculation in the Agreement. "Surge" is in addition to the Fare determined by the Fare Calculation and appears as a completely separate entry on billing/payment statements from the Fare.

52. Uber also sometimes forecasts increased demand and applies a "Boost" multiplier ahead of time to whatever the Fare determined by the Fare Calculation will be. Unlike "Surge," which the passenger

pays, Uber pays "Boost." "Boost" is in addition to the Fare determined by the Fare Calculation and appears as a completely separate entry on billing/payment statements from the Fare.

53. When there is "Surge" and/or "Boost," as provided in the examples above, instead of deducting its Service Fee from only the Fare determined by the Fare Calculation, as the Agreement requires, Uber also takes its Service Fee out of "Surge" and/or "Boost." This practice breaches the Agreement, which, again, requires Uber to deduct its Service Fee from only the Fare determined by the Fare Calculation.

54. On information and belief, Uber has done the exact same thing with regard to Uber X, Uber XL, Uber Select, Uber SUV, and Uber Black.

55. As a direct, proximate, and foreseeable result of Uber's breaches of the Agreement and Service Fee Addendum, Dulberg and the Class have been damaged.

**REQUEST FOR RELIEF**

**WHEREFORE**, Dulberg, individually and on behalf of the proposed Class, requests relief against Uber as follows:

a. An award of damages, in an amount to be determined at trial;

b. Reasonable attorneys' fees and costs of this action;

c. Pre-judgment and post-judgment interest as provided by law; and

d. Such other and further relief that the Court may deem just and proper.

**JURY DEMAND**

Dulberg, on behalf of himself and the proposed Class, demands a trial by jury on all claims so triable.

Dated: March 14, 2018

Respectfully submitted,

NAPOLI SHKOLNIK PLLC

*/s/ Jennifer Liakos*

Jennifer Liakos
525 South Douglas Street, Suite 260
El Segundo, CA 90245
Telephone: (310) 331-8224
Fax: (646) 843-7603
Email: jliakos@napolilaw.com

Paul B. Maslo (*pro hac* forthcoming)
Andrew J. Dressel (*pro hac* forthcoming)
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: pmaslo@napolilaw.com
adressel@napolilaw.com

*Counsel for Plaintiff*